**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TRACY A. BOWSER, | No. CIV S-04-0599-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| JO ANNE B. BARNHART, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel and in forma pauperis, brings this action for judicial review of a final decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g).  Pursuant to the consent of the parties, this case is before the undersigned for final decision on plaintiff's motion for judgment on the pleadings (Doc. 10) and defendant's cross-motion for summary judgment (Doc. 11).

/ / /

/ / /

/ / /

/ / /

1

## I. BACKGROUND

Plaintiff applied for supplemental security income ("SSI") benefits on January 4, 2002, based on disability. In her application, plaintiff claims that her impairment began on August 1, 2001.[1] In papers submitted as part of the claim process, plaintiff states that she suffers from depression, migraine headaches, back pain, epilepsy, and numbness in her legs. Plaintiff states that these impairments limit her ability to work because she cannot concentrate or focus on daily tasks, cannot be around people, and cannot sit, stand, or carry anything heavy. Plaintiff states that she stopped working in 1995, but that her impairments did not first bother her or cause her to become unable to work until August 1, 2001. Plaintiff is a United States citizen born May 1, 1965, and has a seventh grade education.

Plaintiff's SSI claim was initially denied. Following denial of her request for reconsideration, plaintiff requested an administrative hearing, which was held on June 13, 2003, before Administrative Law Judge ("ALJ") Antonio Acevedo-Torres. At the hearing, plaintiff testified that she is unable to work because of scoliosis and depression. Plaintiff also testified that she has seen various psychiatrists and has taken medication to treat depression. As of the date of the hearing, plaintiff testified that she has been treated for depression for four years. Plaintiff also testified that she had migraine headaches almost every day and that she generally did not leave her house due to anxiety attacks. As to physical limitations, plaintiff testified that she could sit only about 30 minutes before her legs went numb, that she could stand and walk for about 30 minutes before her back hurt, and that she could lift up to 15 pounds. Plaintiff testified that she had held short-term part-time jobs and that she thought a full-time job would be too much for her.

As to intellectual limitations, plaintiff testified that she only completed the seventh grade, that she had been in special education classes, and that she had trouble reading and writing. Plaintiff's mother also testified at the hearing. She stated that plaintiff had learning problems

---

[1] Plaintiff now claims benefits for a period closing on March 31, 2004, because plaintiff received a favorable decision on a subsequent application for SSI benefits.

which began in kindergarten, that plaintiff had been placed in special education in the fifth grade, and that plaintiff had difficulty leaving the house.  Plaintiff's mother also testified that plaintiff has epilepsy, but was not being treated for seizures.

The record reflects that plaintiff was evaluated in 2002 by David C. Richwerger, Ed.D., a licensed psychologist, and Clare L. Gavin, CAS, M.A., a learning disability specialist. Dr. Richwerger's report notes that plaintiff had a methamphetamine and cocaine dependence problem, which was then in remission.  Dr. Richwerger, who had an opportunity to review plaintiff's medical records as part of his evaluation, made no note of any medical diagnosis regarding plaintiff's intellectual capacity prior to age 22.  Ms. Gavin's report contains the following notation regarding plaintiff's developmental period:

> During childhood, Tracy's family moved frequently.  Her father was a barber, so he was usually able to find employment in a new location.  She said that the family was quite dysfunctional and that both parents were alcoholics and used drugs.  Her grandparents were also alcoholics.  School was not viewed as important to her parents and, as a result, Tracy had many absences.  She indicated that she has a sister with learning problems.

Other than this notation and plaintiff's mother's testimony at the hearing, the record is devoid of any medical evidence regarding plaintiff's intellectual functioning prior to age 22.

In his July 18, 2003, decision, the ALJ made the following findings:

1. Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability;

2. The plaintiff has an impairment or a combination of impairments considered "severe;"[2]

3. These medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1;

/ / /

---

[2]    Specifically, the ALJ identified the following impairments: scoliosis of the spine, intermittent migraine headaches, hepatitis C, possible history of seizure disorder, depression, borderline intellectual functioning, a learning disability, and adult attention deficit disorder.

  4. Plaintiff's allegations regarding her limitations are not totally credible . . .; the testimony provided by plaintiff's mother is somewhat credible, but does not provide a basis for concluding that the plaintiff is unable to work within the limitations of the established residual functional capacity;

  5. The plaintiff has the residual functional capacity for unskilled light work with limited public contact;

  6. The plaintiff has no past relevant work;

  7. The plaintiff is a "younger individual;"

  8. The plaintiff has a "limited education;"

  9. The plaintiff has the residual functional capacity to perform a significant range of light work;

  10. While the plaintiff's exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 202.17 as a framework for decision-making, there are a significant number of jobs in the national economy plaintiff could perform, such as wrapper, cleaner, and photocopy machine operator; and

  11. The plaintiff was not under a "disability," as defined in the Social Security Act, at any time through the date of decision.

Based on these findings, the ALJ concluded that plaintiff was not disabled and, therefore, not entitled to SSI benefits. After the Appeals Council declined review on February 10, 2004, this appeal followed.

## II. STANDARD OF REVIEW

  The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." See Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III.  DISCUSSION

In her motion for summary judgment, plaintiff argues only that the ALJ erred in finding that her severe impairments do not meet or medically equal one of the listed impairments set forth in the regulations.[3]  Specifically, plaintiff argues that her intellectual impairment meets the listing set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1 ("Listings"), § 12.05.  Thus, the only issue before the court is whether the ALJ erred in finding that plaintiff's intellectual impairment fails to meet this listing.

Section 12.05 of the Listings provides as follows:

> *Mental Retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> A.  Mental incapacity evidenced by dependence upon others

---

[3] In particular, the court notes that plaintiff does not raise any argument with respect to the ALJ's findings regarding plaintiff's residual functional capacity and the availability of jobs in the national economy plaintiff could perform.

for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded; OR
    B. A valid verbal, performance, or full scale IQ of 59 or less; OR
    C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; OR
    D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
        1. Marked restriction of activities of daily living; or
        2. Marked difficulties in maintaining social functioning; or
        3. Marked difficulties in maintaining concentration, persistence, or pace; or
        4. Repeated episodes of decompensation, each of extended duration.

For plaintiff to be presumptively considered disabled under the Listings, all of the specified criteria of a particular listing must be satisfied. See <u>Sullivan v. Zelby</u>, 493 U.S. 521, 531 (1990); <u>Marcia v. Sullivan</u>, 900 F.2d 172, 175 (9th Cir. 1990); <u>Key v. Heckler</u>, 754 F.2d 1545, 1550 (9th Cir. 1985). The plain language of § 12.05 requires two conditions be met. First, the mental impairment must satisfy any one of the four requirements listed at A, B, C, and D. Second, such mental impairment must have initially manifested during the developmental period. For this second condition to be satisfied, § 12.05 specifies that the medical evidence must show that onset of the impairment occurred before age 22.

    Plaintiff was born May 1, 1965, and turned 22 on May 1, 1987. Therefore, for § 12.05 to apply to her, there must be medical evidence in the record showing an onset of mental impairment at some time before May 1, 1987. While there is evidence in the record, in the form of testimony from plaintiff's mother, that plaintiff had learning problems beginning in kindergarten and that she was placed in special education classes as early as the fifth grade, this is not <u>medical</u> evidence, as required by the regulations. Upon thorough review of the record, the

court cannot find any such <u>medical</u> evidence.[4]  Because there is no evidence of onset prior to May 1, 1987, the ALJ did not err in concluding that plaintiff has not met the requirements set forth in § 12.05 for a presumption of disability.  As noted above, plaintiff does not herein put any of the ALJ's other findings in issue.

### IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for judgment on the pleadings is denied;
2. Defendant's cross-motion for summary judgment is granted; and
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED:   September 29, 2005.

                                        */s/ Craig M. Kellison*
                                      **CRAIG M. KELLISON**
                                      UNITED STATES MAGISTRATE JUDGE

---

[4] This does not appear to be a situation where medical evidence may exist, but has not been adduced.  The record reflects that Dr. Richwerger had an opportunity to review plaintiff's complete medical file, and yet he made no mention of medical evidence of onset prior to age 22.  The evidence simply does not exist.  Therefore, the court declines to remand this case.